**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
:
**EVAN HUZINEC**, :
:
    Plaintiff, :
: Civ. Action No.: 16-2754 (FLW)(DEA)
v. :
: **OPINION**
**SIX FLAGS GREAT ADVENTURE,** :
**LLC, and SIX FLAGS** :
**ENTERTAINMENT CORPORATION**, :
:
    Defendants. :
_____:

**WOLFSON**, **United States District Judge:**

    In this case, plaintiff Evan Huzinec ("Plaintiff") alleges that he was struck on the head by a cellphone while riding a roller coaster at Six Flags Great Adventure ("Six Flags"), an amusement park, located in New Jersey, and, as a result, he sustained serious and permanent injuries. Presently before the Court is a partial motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants Six Flags Great Adventure, LLC and Six Flags Entertainment Corporations (collectively, "Defendants"). Specifically, Defendants seek to dismiss only Plaintiff's claims for breach of implied and express warranty and fraudulent concealment; Defendants also move to strike Plaintiff's request for punitive damages. For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

---

[1] I note that Plaintiff does not number the paragraphs in his Complaint sequentially. Rather, at the beginning of each count, Plaintiff restarts his numbering, thereby repeating certain paragraph numbers multiple times within his Complaint. For the sake of clarity, I will cite each paragraph in

1

Plaintiff visited Six Flags located in Jackson, New Jersey, on July 5, 2014.  Pl.'s Compl. at pg. 2, ¶ 2.  According to Plaintiff, he went to Six Flags as "a patron and business invitee upon the premises…."  Id. at pg. 3, ¶ 4.  Plaintiff alleges that, when he was riding a rollercoaster called El Toro, he "was struck in the head, face and right eye by a flying cellphone dropped by another patron on the ride."  See id.  As a result, Plaintiff alleges that he sustained serious injuries, including loss of vision in his right eye and other permanent injuries.  Id. at pg. 4, ¶ 6.  Plaintiff further alleges that he has suffered substantial pain and suffering, and has required significant medical treatment.  Id.  Prior to the filing of the Complaint, Plaintiff claims that he sought certain information from Defendants relating to the alleged accident, such as, inter alia, written reports, video footage and the actual cellphone that allegedly struck Plaintiff.  Id. at pg. 5, ¶ 2 – pg. 6, ¶ 5.  Plaintiff alleges that because Defendants did not respond to his requests, Defendants have fraudulently concealed relevant information concerning the incident.[2]  Id. at pg. 6, ¶ 6.

On May 16, 2016, Plaintiff filed his Complaint, which asserts the following claims: Count One – negligence; Count Two – breach of implied and express warranty; Count Three – fraudulent

---

the Complaint by page number as well as the paragraph number.  On this motion, I will take those factual allegations as true.

[2] In his opposition brief, Plaintiff states that his counsel sent Defendants two letters in April 2016 – prior to the filing of the Complaint – requesting certain information relating to the alleged incident.  Pl.'s Br. in Opp. at pg. 5.  Plaintiff sent a similar request to Defendants in May 2016 – after the filing of the Complaint – because Defendants "refused to provide the information."  Id. at pgs. 5-6.  The Court cannot consider these allegations because they do not appear in the Complaint.  See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007).  Nor can the Court consider the letters that Plaintiff attached as exhibits to his opposition brief, since they are not exhibits to the Complaint.  See Marks v. Struble, 347 F. Supp. 2d 136, 143 (D.N.J. 2004) (stating that, on a motion to dismiss, courts "generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records," and that courts cannot consider matters extraneous to the pleadings).

concealment; Count Four – gross negligence;[3] and Count Five – negligence against Jane and/or John Does.  On June 7, 2016, Defendants filed a motion to dismiss only the claims for breach of implied and express warranty, as well as the claim for fraudulent concealment. In addition, Defendants seek to strike punitive damages as a form of relief.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v.

---

[3] Although Count Four is not a model of clarity, Plaintiff appears to assert a claim for gross negligence against Defendants.  Specifically, Plaintiff alleges that Defendants,

> ... acted willfully, wantonly and intentionally in the ownership, operation, possession, control, inspection, design, management and maintenance of their premises and the "El Toro" roller coaster when adopting and implementing policies and procedures for the use of its premises and amusement rides including the "El Toro" roller coaster, by knowingly and intentionally adopting and implementing defective policies, by failing properly to train and supervise its employees, by failing to provide proper safe guards to plaintiff and by otherwise acting willfully, wantonly and intentionally under the circumstances.

Pl.'s Compl. at pg. 7, ¶ 2; see Smith v. Kroesen, 9 F. Supp. 3d 439, 444 (D.N.J. 2014) (finding that "[g]ross negligence [as a claim] requires substantial proof beyond simple negligence; it requires wanton or reckless disregard for the safety of others.").  Indeed, while Plaintiff uses words such as "intentionally" in his Complaint, in Plaintiff's opposition brief, he made clear that Count Four involves conduct by Six Flags that was allegedly wanton and reckless.  See Pl.'s Br. in Opp. at pg. 12.  Thus, Plaintiff's allegations in that regard form the basis of a gross negligence claim.  See Smith, 9 F. Supp. at 444.

Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

### III. DISCUSSION

### a. Breach of Implied Warranty

In Count Two of the Complaint, Plaintiff alleges that Defendants "expressly and/or impliedly warranted that its property, premises and roller coaster were safe and could be safely used by plaintiff and other similarly situated, were habitual and could be safely used by plaintiff and others similarly situated, were fit, suitable and/or safe for the purpose for which the property premises and rollercoaster were designed and/or intended, were fit, suitable and/or safe for the use in fact made by plaintiff and were properly owned, operated, possessed, controlled, inspected, designed, managed and maintained." Pl.'s Compl. at pgs. 4-5, ¶ 2. Plaintiff further alleges that Defendants breached both express and implied warranties.[4] Id. at pg. 5, ¶ 3.

As to the breach of implied warranty claim, Defendants contend "there are no factual allegations demonstrating how and why the so-called implied warranties came into effect; what the plaintiff's reliance were; what warnings were provided and/or why such warnings were inadequate; and how said breach was the proximate cause of the plaintiff's alleged injuries."[5]

---

[4] With respect to his breach of implied warranty claim, Plaintiff does not specify whether he is asserting a claim for breach of merchantability or breach of fitness for a particular purpose.

[5] Defendants also argue that Plaintiff's claim for breach of implied warranty should be dismissed because the New Jersey Product Liability Act ("PLA"), N.J.S.A. 2A:58C-1, et seq., expressly subsumes all common law claims for breach of implied warranty. The PLA provides that "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty," is subsumed by the statute. N.J.S.A. 2A:58C-1(b)(3); see Worrell v. Elliot & Frantz, 799 F. Supp. 2d 343, 350 (D.N.J. 2011); see also Clements v. Sanofi-Aventis, U.S., Inc., 111 F. Supp. 3d 586, 596 (D.N.J. 2015). Since the passage of the PLA, "breach of implied warranty [claims] are no longer viable as separate causes of action for harm caused by a product." Worrell, 799 F. Supp. 2d at 351; see Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991); see also In re Lead Paint Litig., 191 N.J. 405, 436–47 (2007). However, the PLA subsumes a claim only if "the essential nature of the claim presented... would traditionally be considered a products claim." Worrell, 799 F. Supp. 2d at 351 (internal quotation marks and citations omitted); see Sinclair v. Merck & Co., 195 N.J. 51, 66 (2008). For example, if a plaintiff alleges "that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing

Defs.' Br. at pgs. 5-6. In essence, Defendants take issue with the sufficiency of Plaintiff's pleading. Critically, however, Defendants did not raise the threshold — and more fundamental — issue whether the alleged incident can form the underlying basis for an implied warranty claim. Indeed, because Plaintiff did not purchase any "goods" within the definition set forth in N.J.S.A. 12A:2-105(1), Plaintiff's implied warranty claim fails as a matter of law.

New Jersey's version of the Uniform Commercial Code ("UCC") provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J.S.A. 12A:2-314(1); see Marcus v. BMW of North America, LLC, 687 F.3d 583, 600 n.8 (3d Cir. 2012). In order to be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used." N.J.S.A. 12A:2-314(2)(c); see Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370 (1960) (stating that this warranty "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold."). By contrast, "[w]here the seller at the time of contracting has reason to know any particular

---

defect, failed to contain adequate warnings or instructions, or was designed in a defective manner," the PLA subsumes the claim. Koruba v. Am. Honda Motor Co., 396 N.J. Super. 517, 531 (App. Div. 2007) (quoting N.J.S.A. 2A:58C-2); see Mendez v. Shah, 28 F. Supp. 3d 282, 296 (D.N.J. 2014). But, if the plaintiff alleges that the harm was not caused by a defect inherent in the product, the PLA does not subsume the claim. See Worrell, 799 F. Supp. 2d at 353; Universal Underwriters Ins. Group v. Public Serv. Elec. & Gas Co., 103 F. Supp. 2d 744, 748 (D.N.J. 2000).

Although Plaintiff insists that he is not asserting a products liability claim, it is unclear from the Complaint what type of claim Plaintiff intended to bring in Count Two. Plaintiff alleges that Defendants breached the implied warranty because their "property, premises and roller coaster... were not habitual, fit, suitable and/or safe for the purpose for which... [they] were designed and/or intended...." Pl.'s Compl. at pg. 5, ¶ 3. Such allegations clearly sound in products liability. However, in the same cause of action, Plaintiff also alleges that Defendants' "property, premises and roller coasters . . . were not properly owned, operated, possessed, inspected, controlled . . . and maintained." Id. Those allegations, however, are more akin to a negligence claim. Because the allegations in the Count Two are unclear, the Court cannot determine the nature of Plaintiff's implied warranty claim in connection with the subsumption analysis. In any event, the Court does not need to reach that issue because, as discussed infra, Plaintiff cannot state a claim for breach of implied warranty as a matter of law.

6

purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." N.J.S.A. 12A:2-315; see Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 92 (3d Cir. 1983). Generally speaking, the purpose of these warranties is to "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).[6] Both types of implied warranty claims involve "goods" as defined under N.J.S.A. 12:2-105(1). Indeed, the New Jersey UCC only "applies to transactions in goods." N.J.S.A. 12A:2-102; see Paramount Aviation Corp. v. Agusta, 288 F.3d 67, 72 (3d Cir. 2002). And, "goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities… and things in action." N.J.S.A. 12A:2-105(1); see New Skies Satellites, B.V. v. Home2US Commc'ns, 9 F. Supp. 3d 459, 468-69 (D.N.J. 2014).

In his Complaint, Plaintiff does not make clear what transaction forms the basis of his claim for breach of implied warranty. While Plaintiff does not expressly allege that he purchased a ticket to enter Six Flags, he alleges that he "was a patron and business invitee" of the amusement park on the date of the incident. See Pl.'s Compl. at pg. 3, ¶ 4. Based on that allegation, the only plausible interpretation is that Plaintiff's purchase of the admissions ticket, which allowed him access to attractions such as El Toro, constitute "goods" under the UCC.

While no New Jersey state or federal court has directly addressed the issue whether the purchase of an admission ticket to an amusement park falls within the definition of "goods," a court in the Eastern District of Pennsylvania has considered that issue. In Rossetti v. Busch

---

[6] Plaintiff does not specify which type of implied warranty claim he is bringing.

7

Entertainment Corp., 87 F. Supp. 2d 415 (E.D. Pa. 2000), the plaintiff alleged that she paid an admission fee to enter an amusement park, and while she was riding an attraction, she sustained injuries when the raft that she was riding "rose and came down hard, jolting plaintiff." Id. at 416-417.  Among other claims, the plaintiff asserted that the defendant breached its warranty of merchantability or fitness for use. Id. at 417.  In granting summary judgment against the plaintiff, the court characterized the purchase of an admission ticket as the operative transaction between the parties with respect to the breach of warranty claim, but held that "the purchase of an admission ticket to an amusement park that enables a patron to ride attractions does not constitute 'goods' pursuant to the UCC."[7]  Id. at 418.  In reaching that conclusion, the court relied in part on Dantzler v. S.P. Parks, Inc., No. 87-4434, 1988 WL 131428, at *5 (E.D. Pa. Dec. 6, 1988), which similarly concluded that, with respect to a breach of warranty claim, "the right to enter an amusement park and the right to participate in its various rides and diversions are what plaintiff purchased.  This does not come within the definitions of 'goods'. . . ." Rossetti, 87 F. Supp. 2d at 417-18; see also Coppersmith v. Herco, Inc., 29 Pa. D. & C. 4th 73, 81 (Com. Pl. 1996) (finding that plaintiff's ride in raft was "not the type of transaction with attributes similar to a sale of goods" and thus article 2 warranty provisions could not apply).

Similar to the plaintiff in Rossetti, Plaintiff, here, presumably purchased a ticket to enter Six Flags.  It is beyond dispute that the ticket itself did not cause any harm to Plaintiff.  Rather, the admission ticket simply memorialized, in writing, Plaintiff's right to enter the amusement park

---

[7] Even though the court applied Pennsylvania law, the statute defining "goods" in Pennsylvania is nearly identical to the New Jersey statute.  The Pennsylvania statute states, in pertinent part:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action.

13 Pa.C.S. § 2105(a).

8

and the right to ride on the roller coasters and partake in other activities; those rights are what Plaintiff purchased.  However, this type of transaction does not fall within the definition of "goods" under N.J.S.A. 12A:2-105(1), because in order to be a 'transaction in goods,' the subject matter of the transaction – the putative good – must be tangible and movable.   The subject matter of the transaction alleged here, i.e., riding on a roller coaster, does not meet this criterion.  Therefore, the UCC is inapplicable and Plaintiff's claim for breach of implied warranty claim must necessarily fail.[8]

**b.      Breach of Express Warranty**

Defendants argue that Plaintiff has failed to sufficiently allege a claim for breach of express warranty because Plaintiff does not identify the specific affirmation, promise or description giving rise to such a warranty. In particular, Defendants contend that "there are no factual allegations regarding the content of this express warranty; and who said what to whom, where, when and how are all unstated." Defs.' Br. at pg. 7.  Once again, Defendants have failed to address the threshold issue whether Plaintiff purchased "goods" in connection with his express warranty claim.  Express warranties, like implied warranties, are also governed by the UCC, which provides in relevant parts:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

---

[8] To be clear, Plaintiff does not allege that he purchased any other goods from Defendants that may form the basis for his warranty claims.

N.J.S.A. 12A:2-313(1)(a)-(c); see Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 721 (D.N.J. 2011); Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 455 (D.N.J. 2015). Correspondingly, the definition of "goods" under N.J.S.A. 12A:2-105(1) applies in the context of express warranties. But, as discussed supra, Plaintiff did not purchase any "goods" under N.J.S.A. 12A:2-105(1). See Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 83 (D.N.J. 1990) (stating that the UCC, including its definitions, governs both claims for breach of express and implied warranty). Rather, he purchased a ticket that granted him the access to Six Flags and its attractions. The alleged transaction simply does not fall within the UCC. Accordingly, for the same reasons why Plaintiff's implied warranty claim fails, Plaintiff cannot state a claim for breach of express warranty as a matter of law.

**c. Fraudulent Concealment**

In Count Three, Plaintiff generally alleges that Defendants fraudulently concealed evidence from Plaintiff, including written reports and video footage of the incident at issue here. See Pl.'s Compl. at pg. 6, ¶ 4. In addition, Plaintiff alleges that Defendants have failed to provide the identity of the individual that dropped his or her cellphone while on El Toro. See id. Defendants argue that Plaintiff has prematurely asserted his claim of fraudulent concealment, since this litigation has just commenced and discovery has not yet begun. Furthermore, Defendants contend that Plaintiff has failed to state a claim for fraudulent concealment under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), reasoning that Plaintiff's allegations of concealment are conclusory and they lack the required specificity. In opposition, Plaintiff does not address Defendants' argument that his claim for fraudulent concealment is premature. Rather, Plaintiff argues that he has satisfied the heightened pleading requirements, since "defendants have intentionally concealed, despite request, the identity of the owner of the phone which struck

plaintiff in the head, failed to identify the tour group which the owner of the phone was a member[,] and has failed to even provide the identities of parties which participated in the ownership, operation, management and control of the theme park which plaintiff patronized." Pl.'s Br. in Opp. at pg. 11.

Spoliation "is the term that is used to describe the hiding or destroying of litigation evidence, generally by an adverse party." Rosenblit v. Zimmerman, 166 N.J. 391, 400-01 (2001). In order to remedy spoliation, a litigant is allowed to file a separate tort action for fraudulent concealment against an adversary that hides or destroys evidence during or in anticipation of litigation. See id. at 403, 406-07; Williams v. BASF Catalysts LLC, 765 F.3d 306, 320 (3d Cir. 2014) ("New Jersey permits plaintiffs to recover in an independent action for harm caused in a prior proceeding by an adversary's spoliation."). In order to prove fraudulent concealment, the plaintiff must establish five elements:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

Rosenblit, 166 N.J. at 406-07. In addition, when the spoliation is discovered during the pendency of the litigation, the court is empowered to make use of an adverse inference or order discovery sanctions to remedy spoliation. See id. at 401-03; see also Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 119 (2008). The purpose of these remedies "is to make whole, as nearly as possible, the litigant whose cause of action has been impaired by the absence of crucial evidence; to punish the wrongdoer; and to deter others from such conduct." Rosenblit, 166 N.J. at 401.

In Tartaglia, the New Jersey Supreme Court explained that "the time when an act of spoliation is discovered will indeed strongly suggest the appropriate course of action in that case." Tartaglia, 197 N.J. at 122. While the Court did not address the appropriate course of action if spoliation is discovered before the institution of the action, the Court, nonetheless, explained that, "[i]f the spoliation is discovered while the underlying litigation is ongoing, the adverse inference [or discovery sanctions] may be invoked and the party is permitted to amend the complaint to add a count for fraudulent concealment, but the counts must then be bifurcated." Id. at 118-19. In addition, if the spoliation is discovered after the completion of the underlying action, a litigant can still bring a separate claim for fraudulent concealment. Id. at 119. The Court reasoned that "the subsequent prosecution of the bifurcated claim will not create a duplicative recovery because the focus in that proceeding will be on the damages, both compensatory and punitive, incurred in having to proceed without the destroyed evidence." Id. at 120. Indeed, the Court explained that, [a]lthough some courts have held that the availability of the bifurcated cause of action turns on whether plaintiff succeeds on the substantive claim itself… we see them as different remedies serving different purposes." Id. at 121. Based on Rosenblit and its progeny, Plaintiff, here, is permitted to assert a separate claim for fraudulent concealment, and there appears to be no timing restrictions on when he can file that claim against Defendants, aside from having to properly plead such a claim.

In the instant matter, both parties agree that Rule 9(b) applies to Plaintiff's claim for fraudulent concealment. See Williams v. BASF Catalysts LLC, No. 11-1754, 2016 WL 1367375, at *8 (D.N.J. Apr. 5, 2016) (applying Rule 9(b) to a claim for fraudulent concealment). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must state the circumstances of the alleged wrongdoing with

sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.  See Frederico, 507 F.3d at 200.  However, "[c]ourts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud."  Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks and citation omitted).

In his Complaint, Plaintiff alleges that he reported his injuries to an employee at Six Flags after the incident occurred, see Pl.'s Compl. at pg. 5, ¶ 2, and that Six Flags produced "written reports concerning the accident and confirming the identity of the patron which dropped the cellphone causing plaintiff's injuries."  Id. at pg. 6, ¶ 4.  Plaintiff further alleges that Six Flags maintained video surveillance of the operation of the rollercoaster, see id. at pg. 5, ¶ 3, and that Six Flags is in possession of the actual cellphone that struck Plaintiff in the face.  Id. at pg. 6, ¶ 4. In a somewhat contradictory manner, Plaintiff alleges that Six Flags has "failed to maintain, preserve and provide to plaintiff the video surveillance tapes, the cellphone, the written reports, the identity of the individual who dropped the cellphone and evidence in their possession memorializing the accident and injuries to plaintiff."  Id. at 6, ¶ 5.

Based on those allegations, it is unclear whether Plaintiff is alleging that Defendants possessed the evidence, but have subsequently destroyed it, or whether Defendants possess the evidence, but have failed to provide it to Plaintiff prior to the filing of the Complaint or discovery. To the extent that Plaintiff intended to allege that Defendants have destroyed evidence prior to the start of litigation, Plaintiff simply has not pled Defendants' concealment in that regard with particularity.  To the extent Plaintiff alleges that Defendants have not turned over the evidence that Plaintiff sought prior to the filing of the Complaint, Plaintiff has failed to allege any legal

obligation on the part of Defendants to fulfill Plaintiff's requests for evidence outside of the discovery process.

Indeed, since the filing of Plaintiff's Complaint, the parties have not attended an initial scheduling conference with the Magistrate Judge, and discovery has not commenced. Assuming Defendants are still in possession of the evidence which Plaintiff seeks, Plaintiff has not identified any source of authority imposing a legal obligation on Defendants to produce the requested evidence to Plaintiff — prior to the filing of the Complaint and the start of discovery. See Rosenblit, 166 N.J. at 406-07 (stating that one of the elements of fraudulent concealment is that the defendant "had a legal obligation to disclose evidence in connection with an existing or pending litigation"). At this stage of the litigation, this Court has no basis to find on a motion to dismiss that Defendants will not comply with their discovery obligations in good faith; nor can Plaintiff plausibly allege such non-compliance because discovery has not commenced.

Accordingly, Plaintiff's claim for fraudulent concealment in Count Three is dismissed without prejudice. However, if Plaintiff learns in discovery that Defendants have hidden or destroyed evidence in connection with this litigation, he may seek leave to amend his Complaint.

**d.     Punitive Damages**

Defendants makes two arguments with respect to punitive damages. First, Defendants argue that Plaintiff has failed to specifically request punitive damages in the Complaint, even though Plaintiff sets forth various terms and legal conclusions that often denote such a request. As such, Defendants request that this Court "strike from the Complaint all allegations sounding [in] recklessness and punitive damages," including the following terms: (i) willful, (ii) wanton, (iii) reckless; and (iv) intentional. Defs.' Br. at pg. 12. Second, assuming that Plaintiff has requested

punitive damages, Defendants contend that Plaintiff has failed to allege sufficient facts and circumstances to establish that Defendants acted with willful and wanton disregard.

Despite Defendants' contention to the contrary, Plaintiff expressly seeks punitive damages in connection with his claim for fraudulent concealment in Count Three, as well as his claim for gross negligence in Count Four. See Pl.'s Compl at pg. 6, ¶ 1 – pg. 7, ¶ 3. Nevertheless, because Plaintiff's claim for fraudulent concealment in Count Three has been dismissed, it follows that his request for punitive damages in Count Three is also dismissed. See Hassoun v. Cimmino, 126 F. Supp. 2d 353, 372 (D.N.J. 2000); see also Priore v. Caravan Ingredients, Inc., No. 13-5229, 2014 WL 2931182, at *6 (D.N.J. Jun. 30, 2014) ("As the substantive counts fail to state a claim, [punitive damages] will likewise be dismissed."). However, if Plaintiff at some point amends his Complaint to add a claim for fraudulent concealment, he is permitted to seek punitive damages as a form of relief. See Tartaglia, 197 N.J. at 121.

Furthermore, under New Jersey law, Plaintiff is prohibited from seeking punitive damages in connection with his claim for gross negligence in Count Four. See Schillaci v. First Fid. Bank, 311 N.J. Super. 396, 402 (App. Div. 1998) ("Punitive damages cannot be awarded for negligence or even for gross negligence."); Edwards v. Our Lady of Lourdes Hosp., 217 N.J. Super. 448, 460 (App. Div. 1987) ("Neither mere negligence nor gross negligence can support an award of punitive damages."); see also N.J.S.A. 2A:15-5.12 ("This burden of proof [for punitive damages] may not be satisfied by proof of any degree of negligence including gross negligence."). Therefore, Plaintiff's request for punitive damages in Count Four is dismissed.

**VI.   CONCLUSION**

For the reasons set forth above, Defendants' partial motion to dismiss is granted. Specifically, Plaintiff's claims for breach of implied and express warranty are dismissed as a matter

of law.  Plaintiff's claim for fraudulent concealment and his request for punitive damages in Count Three are dismissed without prejudice.  Finally, Plaintiff's request for punitive damages in Count Four is dismissed.


DATE: January 3, 2017


/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge