*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVAN HUZINEC, | |
| Plaintiff, | Civil Action No. 16-2754 (FLW) (DEA) |
| v. | |
| SIX FLAGS GREAT ADVENTURE, LLC; SIX FLAGS ENTERTAINMENT CORPORATION; *et al.*, | OPINION |
| Defendants. | |
| SIX FLAGS GREAT ADVENTURE, LLC, | |
| Third Party Plaintiff, | |
| v. | |
| FOR FUN TOURS; CELEBRATION TOURS AND TRAVEL, INC.; WILKER GOMES; JULIANO MIRANDA; and MARIANA VOLGADO, | |
| Third Party Defendants. | |

**WOLFSON, United States District Judge:**

Plaintiff Evan Huzinec ("Plaintiff") filed this action against Six Flags Great Adventure, LLC and Six Flags Entertainment Corporation (collectively, "Six Flags"), alleging negligence in connection with personal injuries that Plaintiff allegedly sustained while riding a roller coaster at the Six Flags theme park in Jackson, New Jersey (the "Park"). Thereafter, Third Party Plaintiff Six Flags Great Adventure, LLC ("Third Party Plaintiff" or "SFGA") brought a third party action

for contribution and indemnification against Third Party Defendants For Fun Tours ("FFT"), Celebration Tours and Travel, Inc. ("Celebration"), Wilker Gomes, Juliano Miranda, and Mariana Volgado (collectively, the "Third Party Defendants"). Presently before the Court is Celebration's Motion to Dismiss SFGA's Amended Third Party Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, respectively. Celebration also requests fees and costs in accordance with Federal Rule of Civil Procedure 11. For the reasons that follow, Celebration's Motion to Dismiss SFGA's claims against it for lack of personal jurisdiction is granted, and Celebration's Motion to Dismiss for failure to state a claim is denied as moot. Celebration's request for attorneys' fees and costs is denied.

## **BACKGROUND**

Plaintiff is a Pennsylvania resident. Amended Third Party Complaint ("Am. Compl."), ¶ 1. SFGA is a New Jersey limited liability corporation, with its principal place of business in Jackson, New Jersey. *Id.* at ¶ 2. Celebration is a Florida corporation, with its principal place of business in Orlando, Florida. *Id.* at ¶ 4; Affidavit of Amylto Rios Silva ("Silva Aff."), ¶ 4.[1] FFT is a Brazilian corporation that organizes and operates travel programs to destinations in the United States. Am. Compl. ¶ 3. Although Celebration and FFT have engaged in arm's-length transactions, the two corporations have no other relationship, such as shared employees or

---

[1] "In examining personal jurisdiction under Rule 12(b)(2), the Court must look beyond the pleadings." *Weber v. Jolly Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997); *see Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984); *Witasick v. Estes*, No. 11-3895, 2012 WL 3075988, at *5 (D.N.J. July 30, 2012) ("A Court must look beyond the pleadings in deciding a Rule 12(b)(2) motion.").

common ownership interests. Silva Aff. ¶ 7. Gomes and Miranda are employees of FFT and residents of Brazil. Am. Compl. ¶¶ 5-6. Volgado is a resident of Brazil, who was a participant in a FFT tour to the Park on July 5, 2014. *Id.* at ¶ 7.

The underlying actions giving rise to this action are as follows. According to his Complaint, on July 5, 2014, Plaintiff sustained personal injuries while riding the "El Toro" roller coaster at the Park. *Id.* at ¶ 15. Specifically, Plaintiff alleges that he "'was struck in the head, face and right eye by a flying cellphone dropped by another patron.'" *Id.* (quoting Compl. at 3, ¶ 4). On May 16, 2016, Plaintiff filed suit against Six Flags, asserting claims for negligence, breach of implied and express warranty, and fraudulent concealment. ECF No. 1.

According to the Amended Third Party Complaint, the cellphone that struck Plaintiff belonged to Volgado. Am. Compl. ¶¶ 17-18. In that regard, SFGA alleges that Volgado snuck the cellphone onto the ride, in violation of the Park's rules, and subsequently lost control of the cellphone during the course of the ride, causing it to strike Plaintiff. *Id.* at ¶ 18. SFGA avers that Volgado had a duty to comply with the Park's written and verbal safety regulations, including a regulation requiring passengers of El Toro to secure all loose articles, and that Volgado's failure to do so amounted to a breach of that duty, and proximately caused Plaintiff's injuries. *Id*. at ¶¶ 22-24.

SFGA alleges that, on the date of the incident, Volgado visited the park as part of a travel tour (the "Tour") organized and operated by FFT and Celebration. *Id.* at ¶ 16. Gomes and Miranda were the FFT employees charged with supervising the Tour. *Id.* at ¶ 16. With respect to Celebration's involvement in the Tour, in June of 2014, FFT contacted Celebration to request assistance in procuring admission tickets and transportation for the Tour. *See* Silva Aff. ¶ 8; Certification of Heather M. Eichenbaum ("Eichenbaum Cert."), ¶¶ 14, 48-51. Upon receiving

FFT's request, Celebration contacted SFGA's sales office by telephone and email to obtain a quote for admission tickets on behalf of FFT. *See* Silva Aff. ¶ 10; Eichenbaum Cert. ¶¶ 48-49. Subsequently, FFT advanced funds to Celebration, which Celebration used to purchase tickets to the Park from SFGA.[2] *See* Silva Aff. ¶ 10. SFGA agreed to have FFT pick up the tickets at the Park on July 5, 2014. *See id.* Celebration also contacted UniWorld, a New York corporation, to purchase bus services to and from the Park on behalf of the Tour. *See id.* at ¶ 9; Eichenbaum Cert. ¶¶ 50-51. Once again, FFT provided payment to Celebration in advance for its procurement of the bus services from UniWorld, and Celebration thereafter made payment to UniWorld. *See* Silva Aff. ¶ 9.

SFGA filed the Amended Third Party Complaint on April 25, 2017, asserting claims for contribution and indemnification against Celebration, FFT, Gomes, Miranda, and Volgado. Am. Compl. ¶¶ 25-29. Celebration filed the instant Motion to Dismiss on September 26, 2017. ECF No. 30. That Motion has been fully briefed. ECF Nos. 37-38, 40.

## DISCUSSION

Celebration argues that SFGA's Amended Third Party Complaint must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(2), because this Court lacks personal jurisdiction to adjudicate SFGA's claims against Celebration. In the alternative, Celebration argues that the Amended Third Party Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Finally, Celebration requests that this Court award Celebration the attorneys' fees and costs incurred in filing the instant Motion, pursuant to Federal Rule of Civil Procedure 11.

---

[2] In support of its Opposition to Celebration's Motion, SFGA has also attached invoices demonstrating that, between 2011 and 2016, Celebration purchased over $37,000.00 worth of admission tickets to the Park from SFGA. *See* SFGA's Opposition, Ex. C, ECF No. 37-4.

## I. Personal Jurisdiction

In its Motion to Dismiss, Celebration argues that this Court lacks personal jurisdiction over Celebration in this case. In opposition, SFGA contends that personal jurisdiction exists over Celebration under theories of both general and specific jurisdiction.

### A. Legal Standard

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *see Cerciello v. Canale*, 563 F. App'x 924, 925 n. 1 (3d Cir. 2014) (noting that the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper.") (citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction." *Id.* at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* FED. R. CIV. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. 3d at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on *in personam* jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

**B. General and Specific Jurisdiction**

Courts recognize two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction refers to a court's power to "hear any and all claims" against a defendant. *Goodyear*, 564 U.S. at 919. General jurisdiction exists over a corporation where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.*; *Daimler*, 571 U.S. at 138. In *Daimler*, the Supreme Court explained that a corporation is "at home" in its place of "incorporation and principal place of business," and thus, those locations serve as the paradigm bases for general jurisdiction. 571 U.S. at 137. As a result, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'"[3] *Malik*, 710 F. App'x at 564 (citation omitted).

Here, in arguing that general jurisdiction exists, SFGA points to various transactions between Celebration and SFGA, memorialized in invoices, which show that Celebration purchased over $37,000.00 worth of admission tickets from SFGA between 2011 and 2016. *See* SFGA's Opposition, Ex. C. As a result of those transactions, SFGA contends that "Celebration's contacts with SFGA alone are both continuous and systematic," SFGA's Opposition Br. at 5, rendering SFGA "at home" in New Jersey, and thus, subjecting SFGA to general jurisdiction in New Jersey. I disagree.

Contrary to SFGA's argument, Celebration is not subject to general jurisdiction in New Jersey. Significantly, as SFGA's Amended Complaint acknowledges, Celebration is a Florida

---

[3] Nonetheless, the *Daimler* Court noted that it was not foreclosing "the possibility that in an *exceptional case*, corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." 571 U.S. at 139 n. 19 (emphasis added).

corporation with its principal place of business in Florida. Am. Compl. ¶ 4. Therefore, SFGA has failed to establish either of the paradigmatic bases for general jurisdiction under *Daimler*. Nor has SFGA alleged facts sufficient to find that is "an 'exceptional' case such that the place of incorporation/principal place of business rule should be disregarded." *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017). To that end, while SFGA alleges that Celebration purchased tickets in New Jersey, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). Indeed, as the *Daimler* Court explained:

> General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.

571 U.S. at 139.

Here, the transactions between SFGA and Celebration are insufficient to meet *Daimler's* standard of an exceptional case.[4] SFGA has not alleged that Celebration maintains any offices in New Jersey, has employees in New Jersey, incurs or pays taxes in New Jersey, or has any business activities in New Jersey outside of its dealings with SFGA. Silva Aff. ¶¶ 4-6. Rather, SFGA has only proffered evidence that, at most, shows that Celebration conducted some business in New Jersey, without any analysis of Celebration's nationwide dealings. That limited transactional history, standing alone, falls far short of the "continuous and systematic" affiliations with New Jersey required to find that Celebration is subject to general jurisdiction in

---

[4] Tellingly, SFGA's Opposition fails to reference *Daimler* altogether.

8

New Jersey. *See JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014) (finding that general jurisdiction was lacking, where the plaintiff "only offered evidence that shows that [the defendant] conducted some business in New Jersey . . . ."). Indeed, if evidence of sporadic business dealings in a forum, without more, constituted exceptional circumstances, the exception would swallow the rule. Accordingly, the Court finds that SFGA has not met its burden of establishing that Celebration is subject to general jurisdiction in New Jersey.

Next, in the absence of general jurisdiction, "a state court can exercise only specific, or case-linked, jurisdiction over a dispute." *Bristol-Myers*, 137 S. Ct. at 1785. Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127 (quoting *Helicopteros*, 466 U.S. at 414 n. 8); *see Bristol-Myers*, 137 S. Ct. at 1781 ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'") (quoting *Goodyear*, 564 U.S. at 919). Courts apply a three part test to determine whether specific jurisdiction over a non-resident defendant exists: "First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Petrucelli v. Rusin*, 642 F. App'x 108, 110 (3d Cir. 2016) (internal citations and quotations marks omitted); *see Bristol-Myers*, 137 S. Ct. at 1780.

In arguing that specific jurisdiction exists in this case, SFGA contends that Celebration purposely directed its activities to New Jersey by purchasing admission tickets to the Park and

9

arranging bus services for the Tour on behalf of FFT. Next, relying on the Third Circuit's opinion in *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007), SFGA maintains that there is a sufficient nexus between Celebration's forum contacts with New Jersey – Celebration's purchase of admission tickets from SFGA and its arrangement of transportation for the Tour on behalf of FFT – and Plaintiff's injury to find that specific jurisdiction exists. Finally, SFGA contends that the exercise of specific jurisdiction over Celebration would not offend traditional notions of fair play and substantial justice.

Contrary to SFGA's arguments, the Court does not find that specific jurisdiction over Celebration exists in this case. As the Court has already explained, the first factor of the specific jurisdiction test requires a showing that the defendant "'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). While "[p]hysical entrance [into the forum] is not required," the defendant must have deliberately targeted the forum State. *O'Connor*, 496 F.3d at 317; *see Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). Here, Celebration concedes that it purposely directed its activities at the New Jersey by: (1) contacting SFGA's New Jersey sales office by telephone or email to obtain pricing quotes for admission tickets to the Park on behalf of FFT; and (2) making payment, with funds provided in advance by FFT, to SFGA for admission tickets for the FFT Tour.[5] Celebration's Reply Br. at 10-11. Accordingly, the Court will assume, as the parties do, that Celebration purposely directed those activities at the forum.

---

[5] In its Motion, Celebration disputes SFGA's contention that the procurement of bus services was a New Jersey related contact, arguing that its communications were directed at UniWorld's offices in New York, rather than New Jersey. *See* Mot. to Dismiss at 17 n. 2. Nonetheless,

10

Nonetheless, the Court cannot find that the present litigation arises out of or relates to Celebration's forum contacts. While the Third Circuit has not adopted a bright-line test for determining whether a tort case arises out of or relates to a defendant's forum contacts, *O'Connor*, 496 F.3d at 320, it has provided useful guidance for courts conducting the relatedness inquiry. The starting point for any court's analysis is but-for causation, *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011), which requires a showing that "the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor*, 496 F.3d at 319. Nonetheless, the "the animating principle behind the relatedness requirement is the notion of a tacit *quid pro quo* that makes litigation in the forum reasonably foreseeable." *Id.* at 322. But-for causation falls short of that principle, because it "literally embraces every event that hindsight can logically identify in the causative chain." *Id.* (citation and quotation marks omitted). Thus, "[b]ut-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations." *Id.*

Rather, "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." *Id.* at 323. While "there is no 'specific rule' susceptible to mechanical application in every case, . . . in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests." *Id.* (quoting *Miller Yacht Sales*, 384 F.3d at 100). As the *O'Connor* court explained:

> With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits. The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of

---

because Celebration's procurement of bus services from UniWorld does not alter this Court's ultimate conclusion, the Court will assume, for the purposes of this Motion, that those transactions constitute a New Jersey contact.

proximate causation, but it must nonetheless be intimate enough to keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable.

496 F.3d at 323 (internal citations omitted).

Here, SFGA has failed to demonstrate that its claims against Celebration arise out of or relate to Celebration's forum contacts. As the Court has already explained, Celebration's only contacts with New Jersey were procuring admission tickets to the Park from SFGA on behalf of FFT, and procuring transportation services for the Tour on behalf of FFT.[6] However, SFGA's contribution and indemnification claims against Celebration relate to the negligence committed by a member of the Tour while at the Park, as opposed to those ticket purchases or bus services. To that end, while this case may have presented a closer call if the underlying claims centered on allegations related to those tickets (*e.g.*, in a breach of contract action based on fraudulent ticket sales), the Court cannot conclude that Celebration's jurisdictional exposure includes negligence claims arising out of an alleged tort committed by a Tour member at the Park.[7] As a mere conduit for the ticket sales, it was not reasonably foreseeable that Celebration would be hailed into a New Jersey court for the actions of one of the end-consumers of those tickets. Indeed, SFGA's argument, taken to its logical extreme, would subject Celebration to specific jurisdiction in New Jersey, regardless of how many times an admission ticket for the Park changed hands,

---

[6] Outside of Celebration's status as an intermediary in organizing the Tour, SFGA has not established jurisdictional facts demonstrating that Celebration had any other responsibilities with regard to the Tour, including any supervisory role over the Tour's participants. Indeed, although SFGA alleges generally in its Amended Complaint that Volgado was at the Park under the "guardianship of [Celebration, FFT,] and/or Juliano Miranda and/or Wilker Gomes," Am. Compl. ¶ 16, in its response to the instant Motion, SFGA conceded that Volgado "was a member of a tour group . . . operated by [FFT]," and that the Tour's chaperones, Miranda and Gomes, were employees of FFT, not Celebration. *See* SFGA's Opposition Br. at 1; Eichenbaum Cert. ¶ 9.

[7] Indeed, in a prior Opinion in this case, this Court already held that "[i]t is beyond dispute that the ticket itself did not cause any harm to Plaintiff." ECF No. 10 at 8.

where the ultimate consumer of the ticket engaged in some sort of tortious action while visiting the Park. In short, the claims at issue in this case are simply too attenuated from Celebration's forum contacts to hold that specific jurisdiction exists.

Additionally, SFGA's reliance on *O'Connor* is misplaced. In that case, the plaintiff filed negligence claims against a Barbados hotel in Pennsylvania court, after the plaintiff slipped and fell in the hotel's massage parlor. *See O'Connor*, 496 F.3d at 315-16. Prior to the accident, the hotel actively sent brochures highlighting its amenities to the plaintiff's Pennsylvania home. *See id.* at 316. As a result of those brochures, the plaintiff decided to book a trip to the hotel, and, through various phone calls between the plaintiff and the hotel, prearranged the massage. *See id.* The hotel moved to dismiss for lack of personal jurisdiction, which motion was granted by the District Court. *Id.*

On appeal, the Third Circuit reversed, finding that the Pennsylvania court had specific jurisdiction to adjudicate the plaintiff's claims against the hotel. *Id.* at 325. As a threshold matter, the court found that the plaintiff had sufficiently alleged that the hotel's forum contacts were the but-for cause of his injury. *Id.* at 323 ("[B]ut for the mailing of the brochure, [the plaintiff] never would have purchased a massage, and he would not have suffered a massage-related injury."). Next, in finding that the nexus between the plaintiff's claims and the hotel's forum contacts exceeded but-for causation, the court emphasized the fact that the hotel contracted with the plaintiff to provide massage services while the plaintiff was in Pennsylvania. *See id.* Specifically, the court explained that the "hotel acquired certain rights under that contract, and with those rights came accompanying obligations," including "an implied promise that [the hotel] would 'exercise due care in performing the services required.'" *Id.* (citation omitted). And, because the plaintiff alleged that the hotel breached its duty of care, the court

13

found that those claims were "directly and closely relate[d]" to the hotel's forum contacts, thereby satisfying the requirements for specific jurisdiction. *Id*.

Conversely, here, Celebration's forum contacts are completely divorced of the underlying personal injury claims asserted by Plaintiff.[8] To that end, unlike in *O'Connor*, neither Plaintiff nor SFGA has alleged that Celebration contracted with Plaintiff directly, or otherwise had any duty of care with respect to the conduct of the Tour's participants. Rather, Celebration's forum contacts are limited to its intermediary role in procuring tickets and bus services on behalf of FFT. Under these circumstances, the Court cannot find that there is any "meaningful link" between the legal obligations that arose from those business transactions and the underlying claims at issue in this case. *O'Connor*, 496 F.3d at 324. Stated differently, Celebration's enjoyment of the right to serve as an intermediary broker for tickets and transportation services in New Jersey did not give rise to any reciprocal duty of care to protect visitors of the Park from the conduct of the end-users of those tickets. Accordingly, because the claims at issue in this case do not arise out of or relate to Celebration's New Jersey contacts, the Court finds that it lacks personal jurisdiction to adjudicate SFGA's claims against Celebration.[9]

C. **Jurisdictional Discovery**

Finally, SFGA argues that the Court should permit jurisdictional discovery in this case. The Supreme Court has advised that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). In general, courts within the Third Circuit permit jurisdictional

---

[8] Because SFGA's claims against Celebration – for contribution and indemnification – are entirely derivative of Plaintiff's negligence claims in the underlying lawsuit, the Court examines whether Celebration's forum contacts arise out of or relate to Plaintiff's negligence claims.
[9] In light of the Court's finding that the claims at issue in this case do not arise out of or relate to Celebration's forum contacts, I need not reach the third step of the specific jurisdiction analysis.

discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Additionally, the Third Circuit has instructed that "jurisdictional discovery [is] particularly appropriate where a defendant is a corporation." *Rocke v. Pebble Beach Co.,* 541 F. App'x 208, 212 (3d Cir. 2013). Nonetheless, jurisdictional discovery is not warranted unless the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state . . . .'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank*, 960 F.2d at 1223). Thus, a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *see Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n. 38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

In the case at bar, SFGA has not presented factual allegations sufficient to find that jurisdictional discovery is warranted. To that end, the Court has already found that the only forum contacts identified by SFGA (Celebration's ticket purchases from SFGA and transactions with UniWorld) fall woefully short of the sort of continuous and systematic contacts needed to deem Celebration "at home" in New Jersey, and are unrelated to the claims at issue in this suit. And, while SFGA argues generally that "the full extent of Celebration's contacts with New Jersey [are] unknown," SFGA's Opposition Br. at 5 n. 2, SFGA concedes that Celebration is a Florida corporation with its principal place of business in Florida, and has not alleged any other specific facts demonstrating that SFGA may have additional contacts in New Jersey. Accordingly, because Plaintiff has failed to allege with particularity any facts suggesting that

personal jurisdiction may exist over Celebration with respect to the negligence claims at issue in this case, the Court finds that jurisdictional discovery would be futile, and SFGA's request is denied.[10] *See Malik*, 710 F. App'x at 565 (affirming the District Court's denial of jurisdictional discovery, where the plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite contacts between appellees and the forum state to warrant jurisdictional discovery."); *Barth*, 697 F. App'x at 120 (affirming denial of request for jurisdictional discovery, where "jurisdictional discovery would have been futile.").

## II. Celebration's Request for Attorneys' Fees and Costs

Pursuant to Federal Rule of Civil Procedure 11, Celebration also seeks to recover the attorneys' fees and costs that it incurred in filing instant Motion. Specifically, Celebration argues that Rule 11 sanctions are appropriate, because: (1) SFGA's claims against Celebration were made with knowledge that FFT, and not Celebration, operated the Tour; (2) SFGA was aware that Volgado was a participant in the Tour, and that the Tour was under the supervision of two FFT employees; and (3) SFGA failed to voluntarily withdraw its claims against Celebration, despite Celebration's September 14, 2017 letter identifying the jurisdictional issues in this case. In opposition, SFGA contends that Rule 11 sanctions are inappropriate, because its claims against Celebration are well-grounded in both law and fact.

Under Federal Rule of Civil Procedure 11(c), if "the court determines that [Federal Rule of Civil Procedure] Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11. Rule 11(b) provides:

---

[10] In light of the Court's finding that it lacks personal jurisdiction to adjudicate SFGA's claims against Celebration, the Court will not reach the merits of Celebration's Rule 12(b)(6) contentions.

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

Rule 11 sanctions are "intended to discourage the filing of frivolous, unsupported, or unreasonable claims." *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002); *see In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir. 2008) ("The purpose of Rule 11 is to deter litigation abuse that is the result of a particular 'pleading, written motion, or other paper' and, thus, streamline litigation."). "Rule 11 sanctions are warranted 'only in the 'exceptional circumstances' where a claim or motion is patently unmeritorious or frivolous." *Goldenberg v. Indel, Inc.*, No. 09-5202, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011) (quoting *Watson v. City of Salem*, 934 F. Supp. 643, 662 (D.N.J. 1995)); *see Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) ("Rule 11 sanctions may be awarded in exceptional circumstances in order to 'discourage plaintiffs from bringing baseless actions or making frivolous motions.'") (quoting *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). Stated differently, Rule 11 sanctions are only appropriate "in those rare instances where the evident frivolousness of a claim or motion

amounts to an 'abuse[ ] of the legal system.'" *Didonato v. Imagine One Tech. & Mgmt., Ltd*, No. 15-8377, 2016 WL 6584911, at *7 (D.N.J. Nov. 7, 2016) (quoting *Doering*, 857 F.2d at 194).

"The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citation omitted); *Leuallen*, 180 F. Supp. 2d at 618. In that regard, "[t]he Rule imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing." *Bensalem*, 38 F.3d at 1314. Ultimately, "[t]he award of costs and attorneys' fees under Rule 11 . . . is a matter committed to the district court's discretion." S*un Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 64 (3d Cir. 1986); *see Jefferson Beach House Condo. Ass'n v. Harleysville Ins. Co. of New Jersey*, No. 13-6480, 2014 WL 4681074, at *8 (D.N.J. Sept. 22, 2014) ("Rule 11 sanctions are imposed at the discretion of the Court . . . .").

Here, the Court finds that an award of attorneys' fees and costs under Rule 11 is not warranted. Simply put, this is far from the exceptional case. Although I have ruled that SFGA failed to meet its burden of establishing personal jurisdiction over Celebration, SFGA's arguments were grounded in actual forum contacts between Celebration and New Jersey – those contacts were simply too attenuated from the underlying negligence claims in this case to find that specific jurisdiction exists. As indicated by the Supreme Court's recent decision in *Bristol-Myers*, personal jurisdiction is an issue that continues to perplex both parties and the courts. Under these circumstances, the Court cannot find that SFGA's assertion of personal jurisdiction over Celebration in this District amounts to abuse of the litigation process, and thus, the Court declines to impose Rule 11 sanctions in this case.

## **CONCLUSION**

For the foregoing reasons, SFGA's claims against Celebration are dismissed for lack of personal jurisdiction.  Celebration's request for attorneys' fees and costs is denied.

Dated:  April 24, 2018

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge