*NOT FOR PUBLICATON*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EVAN HUZINEC,<br><br>                     Plaintiff,<br><br>v.<br><br>SIX FLAGS GREAT ADVENTURE, LLC,<br>et al.,<br><br>                     Defendants. | Civil Action No. 3:16-cv-02754-FLW-DEA<br><br>**OPINION** |
| SIX FLAGS GREAT ADVENTURE, LLC,<br><br>             Third-Party Plaintiff,<br><br>v.<br><br>FOR FUN TOURS, CELEBRATION<br>TOURS AND TRAVEL, INC., WILKER<br>GOMES, JULIANO MIRANDA, and<br>MARIANA VOLGADO,<br><br>             Third-Party Defendants. |  |

**<u>WOLFSON, Chief Judge:</u>**

Plaintiff Evan Huzinec sues Defendants Six Flags Great Adventures ("SFGA"), Six Flags Entertainment Corporation ("SFEC"), Six Flag Theme Park ("SFTP"), and various fictitious entities (collectively, "Defendants") for injuries he suffered while riding a roller coaster. According to Huzinec, Defendants negligently operated the ride, causing him permanent eye injuries. Defendants now move to exclude Huzinec's expert as unqualified and unreliable, and for

summary judgment on the grounds that Huzinec has not established the applicable standard of care or breach. For the following reasons, Defendants' motions are **GRANTED**.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

SFGA operates Six Flags, an amusement park in New Jersey. *See* Def. Statement of Undisputed Material Facts ("SUMF"), ¶ 3. SFEC is a holding company for park assets. *Id.* ¶ 6. SFTP is the sole member of SFGA. *Id.* ¶ 11. On July 5, 2014, Mariana Volgado, a fourteen year old park patron, dropped her cellphone while riding a roller coaster called El Toro. *Id.* ¶¶ 17-19. Volgado was visiting the park with a Brazilian group called "For Fun Tours," which brings teenagers to the United States as part of an English language immersion program. *Id.* ¶ 20. Volgado's "flying" phone "struck" Huzinec "in the head, face, and right eye." *Id.* ¶¶ 14-16, 18-19. As a result, Huzinec is blind in that eye. *Id.*; Compl., ¶ 4. Following the accident, SFGA ejected Volgado and one of her chaperones, Juliano Miranda, from the park for violating SFGA's "loose objects" policy, which prohibits unsecured phones on rides like El Toro. *Id.* ¶¶ 19, 21; Ex. H. SFGA "clearly posts and announces" the policy throughout the park and enforces it with "zero tolerance." *Id.* ¶ 15; Ex. D.

Huzinec underwent "extensive" medical treatment and "several surgeries," *see* Pl. Br., at 32-34, after which he filed suit against SFGA and SFEC on May 16, 2016. *See* ECF No. 1. His original Complaint alleged negligent "operation, possession, control, inspection, design, management, and maintenance" in Count I, *see* Compl., at 2-3, breach of implied and express warranty in Count II, *id.* at 4, fraudulent concealment in Count III, *id.* at 5-6, and gross negligence in Count IV for willful and wanton conduct. *Id.* at 7. Huzinec also sought punitive damages in Counts III and IV. *Id.* On June 7, 2016, SFGA moved for dismissal on Counts I and II in full, and

on Huzinec's claim for punitive damages in Count IV, which I granted on January 3, 2017. *See* ECF Nos. 10-11.

On January 20, 2017, SFGA and SFEC filed Answers. *See* ECF Nos. 12-13. They then filed a Third-Party Complaint against For Fun Tours, Celebration Tours and Travel, Inc., Wilker Gomes, Juliano Miranda, and Mariana Volgado. *See* ECF Nos. 16, 19. Celebration Tours and Travel subsequently moved to dismiss for lack of personal jurisdiction, *see* ECF No. 30, which I granted on April 24, 2018. *See* ECF Nos. 50-51. In July 2018, Magistrate Judge Douglas E. Arpert ordered the parties to mediate, *see* ECF No. 53, but they could not reach a settlement, and Judge Arpert reinstated this matter in November 2018. *See* ECF No. 54.

On April 26, 2019, Huzinec moved to amend his Complaint to add SFTP. *See* ECF No. 56, Judge Arpert granted Huzinec's motion on September 27, 2019. *See* ECF No. 60. Huzinec filed an Amended Complaint on October 15, 2019, against all Defendants. *See* ECF no. 62. As pled, the Amended Complaint asserted essentially the same claims as the original Complaint, including willful and wanton conduct, and demanded the same relief, including punitive damages. *Id.* SFGA immediately moved to dismiss Count II on the grounds that I have "already ruled [that] claim deficient in an Order dated January 7, 2017." *See* ECF No. 63, at 4. Around the same time, SFGA moved for default judgment against Wilker Gomes and For Fun Tours. *See* ECF Nos. 72-73. I denied SFGA's default motions for failing to "address any of the discretionary factors." *See* ECF No. 77, at 3. I granted its dismissal motion on Count II and struck all references to punitive damages. *See* ECF No. 79, at 4 & n.2.

Although not a model of clarity, the crux of the operative Amended Complaint is ordinary negligence, failure to train, and premises liability.[1] As to ordinary negligence, Huzinec asserts that

---

1       Plaintiff does not assert failure to warn as a theory of liability, apparently because there is prominent signage at Six Flags stating park policies. *See infra.*

SFGA unreasonably enforced the loose objects policy by failing to instruct Volgado to secure her phone while she queued for El Toro, supervise her for compliance before/during the ride, and stop the ride once she unsecured her phone. To demonstrate breach, Huzinec submits an expert report from Daniel Doyle. Huzinec also asserts that SFGA unreasonably maintained its loose objects policy despite a foreseeable risk that patrons such as Volgado might unsecure their phones. To demonstrate breach here, Huzinec submits a 2013 incident report documenting a similar injury to another patron and ten YouTube videos purporting to show patrons filming themselves on El Toro. Huzinec further asserts that SFGA failed to train ride operators to safely run El Toro, and maintained dangerous conditions on park premises.

On September 25, 2020, SFGA filed the instant summary judgment motion along with a motion to exclude Huzinec's expert. *See* ECF No. 86. SFGA argues that Doyle is unqualified to opine on the question whether it negligently developed or enforced its loose objects policy because he is (at most) an expert in ride maintenance, not park operations. *See* Def. Br., ¶¶ 26-29. SFGA further argues that Doyle is unreliable to the extent that his conclusions do not follow from any evidence in the record, but instead are based on speculation and "personal belief." *See id.* ¶¶ 46, 57-58; Ex. E, at 12. SFGA then moves for summary judgment on the grounds that Huzinec has not established the applicable standard of care or adduced any evidence that it breached its duty.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quotations omitted); Fed. R. Civ. P. 56(a). An issue is "genuine" when "a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Id.* The court construes all facts in the light most favorable to the nonmoving party, *see Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998), whose evidence "is to be believed," and makes "all justifiable inferences . . . in [its] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *see also Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. That party may discharge its burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof," as here. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quotations and citations omitted). The nonmoving party must then identify, by affidavits or otherwise, specific facts showing that there is a triable issue. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party "may not rest upon the mere allegations or denials of the . . . pleading[s]." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quotations omitted). Instead, "[it] must make a showing sufficient to establish the existence of [every] element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Cooper v. Sniezek*, 418 Fed. App'x. 56, 58 (3d Cir. 2011) (quotations and citations omitted). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, [it] must be more than a scintilla," *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), and conclusory declarations, even if made in sworn statements, will not suffice. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

### III.    DISCUSSION

### A.  Doyle Is Not Qualified

SFGA first moves to exclude Plaintiff's expert, Daniel Doyle, based on his qualifications. *See* Def. Rep. Br., at 2. Trial courts are "gatekeepers" with a responsibility to exclude improper expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). To this end, Fed. R. Evid. 702 imposes a "trilogy of restrictions on expert testimony: qualification, reliability and fit." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003). A district court must first qualify an expert witness to testify as such. To be qualified, the witness must "possess specialized expertise." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has "interpreted this requirement liberally" to include "a broad range of knowledge, skills, and training." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994); *see also Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts.").

Even so, the Third Circuit has "set a floor with respect to an expert witness's qualifications." *Elcock v. Kmart Corp.*, 233 F.3d 734, 742 (3d Cir. 2000). For instance, if an expert's area of expertise is "adjacent to, but not actually encompassing, the subject matter of his testimony, he may be deemed unqualified." *Player v. Motiva Enter., LLC*, No. 02-3216, 2006 WL 166452, at *5 (D.N.J. Jan. 20, 2006). That is, expertise on some other subject, even if it provides "familiarity" with the proposed subject of testimony, is usually not sufficient. *See Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 373 (D.N.J. 1995). The party proffering the expert must establish

his qualifications by a preponderance, *see Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987), and no *Daubert* hearing is necessary where there is a well-developed factual record, as here. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000).

Plaintiff insists that Doyle is qualified because, since 2018, he "provides technical investigations, analysis, reports and testimony toward the resolution of commercial and personal injury litigation involving amusement ride failure analysis, maintenance, inspection, documentation, supervision, technician training, safety and certification procedures, evacuation procedures and operational standards of care" as a "forensic associate." Pl. Br., at 14. Doyle also "has over twenty years' experience in the amusement park industry," mainly at SeaWorld. *Id.* This includes eleven years as "Ride Maintenance Supervisor," during which he administered "departmental training in all levels of safety procedures" and "[r]esearched, organized, and presented safety training classes," four years as "Ride Maintenance Lead," four years as "Ride Mechanic," one year as "Filtration Mechanic II," two years as "Filtration Mechanic," and one year as "Diver (part-time)." *See* Pl. Opp., Ex. G. Finally, Doyle obtained an "Operations Certification Level I" from the National Association of Amusement Ride Safety Officials ("NAARSO") in 2019 and attended a safety forum with NAARSO at some point during that year. *Id.* SFGA argues that none of the above is sufficient to establish Doyle as an expert on operations because his experience involves "perform[ing] inspections of the mechanical, electrical and other physical components of rides," and he does not "operate them, develop rules for riders, instruct patrons on policies, or monitor compliance." Pl. Br., at 13 & n.6.

I agree with SFGA that Doyle is not qualified here. While "an expert's qualifications need not match perfectly with the issue presented in a case," *Guillen v. Six Flags Great Adventure, LLC*, No. 14-2091, 2015 WL 9582141, at *2 (D.N.J. Dec. 29, 2015), there must be *some* overlap. Courts

"stress" that "the criteria required to qualify an expert turn largely upon the subject matter of the particular opinion to be offered" for that reason. *Kerrigan v. Maxon Ind.*, 223 F. Supp. 2d 626, 635 (E.D. Pa. 2002). Ride maintenance may be adjacent to ride operations, and it may give Doyle general or limited familiarity with operational practices relating to technical or physical aspects of El Toro, such as the speed at which operators should start or stop the ride, but it is irrelevant to the subject matter of his testimony: "El Toro ride operators failed . . . to ensure that riders . . . secured their loose articles," SFGA "should have known that [its] policies were not being followed, and that [its] ride operators' training was insufficient, that [its] policy regarding loose articles being brought onto El Toro was defective," SFGA "fail[ed] . . . to ensure that no loose articles were taken on the El Toro by riders and allowed a cell phone to become loose, causing Huzinec's injuries," and "whoever owns and operates and develops procedures for El Toro . . . and enforces those procedures . . . is responsible for the defective procedure that resulted in Mr. Huzinec's injury." *See generally* Pl. Br., Ex. G.

Doyle is not qualified to testify on these matters because he has never operated a ride, *id.*, Ex. G, at T139:2, T140:2, T210:10-213:1, developed park safety protocols or policies, such as the loose objects policy at issue, instructed patrons before loading them onto rides, or—perhaps most importantly—supervised patrons for compliance. Doyle also did not attend any NAARSO class on operations until 2019, *id.* at T59:13-61:14, does not recall any subject matter from NAARSO on loose object best practices, *id.* at T61:21-63:5, has never been qualified as an expert on this subject, *see* Def. Rep. Br., at 2, and admits that "all" of his continuing education courses "have to do with my position as supervisor in the ride maintenance." *Id.* at T61:1-10. Simply, Doyle "lacks any specialized knowledge [or experience] to support his expert opinions." *Magnetar Tech. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127, 2014 WL 529983, at *1 (D. Del. Feb. 7, 2014). Without

that background, I cannot permit him to testify to whether SFGA negligently operated El Toro or should have changed its loose objects policy.[2] *Cf. Lauria v. Nat'l Railroad Passenger Corp.*, 145 F.3d 593, 596-97 (3d Cir. 1998) (qualifying a maintenance engineer to testify to railroad track maintenance operations, such as whether it was negligent not to "remove a piece of wood"); *Crowley v. Six Flags Great Adventure*, No. 14-2433, 2017 WL 1836155, at *2-3 (D.N.J. May 8, 2017) (qualifying an engineer specializing in design and development of theme park rides to testify to whether a "weak link" in a ride mechanism caused an injury). Because Doyle does not appear to offer any other testimony, his opinions are excluded entirely.

### B.  Doyle's Opinions Are Unreliable

Although my decision that Doyle is not qualified ends the *Daubert* inquiry, I nevertheless proceed to discuss whether his opinions are reliable. Expert testimony must "rest[] on a reliable foundation." *Daubert*, 509 U.S. at 597. This means that it cannot be based on "subjective belief or unsupported speculation." *Paoli*, 35 F.3d at 742 (quotations and citation omitted); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004).

"[T]he reliability analysis applies to all aspects of an expert's testimony," including "the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). This means that, "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) (quotations and citation

---

2      Doyle's personal knowledge, experience, and expertise matter all the more here because his opinions are not scientific and the reliability analysis, *see infra*, does not follow the *Daubert* factors. *See Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002); *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 12-07263, 2016 WL 4039329, at *5 (E.D. Pa. July 28, 2016).

omitted). It also means that there cannot be "too great an analytical gap between the data and the opinion proffered," *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *In re TMI Litigation*, 193 F.3d 613, 682-83 (3d Cir. 1999), and I need not admit any evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Id.*

Finally, in determining whether a technical (rather than scientific) opinion is reliable, a court "*may* consider one or more of the more specific factors that *Daubert* mentioned." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (citing testable hypothesis, peer review, error rate, standards controlling test, and acceptance within community). Yet, because the test for reliability is "flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case," a court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142; *see also Pineda*, 520 F.3d at 248; *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 536 (D.N.J.2001) (reconfiguring *Daubert* for "technical" subjects, and identifying several factors for courts to consider including evidence of industry practice and accident history).

Here, as SFGA contends, Doyle's opinions are "fraught" with conclusions for which he offers no basis other than conjecture and speculation. *See* Def. Br., at 14. First, Doyle concludes that SFGA developed a "defective" loose objects policy, and inadequately trained ride operators to implement/enforce it, *see* Pl. Br., Ex. G, despite recognizing at his deposition that SFGA's policies and training comply with industry standards and are "adequate." *See* Def. Br., Ex. G, at T143:12-144:12, T144:14-148:1, T155:3-8, T292:12-24, T295:22-296:2, T:296:5-17, T299:1-10. Particularly worth mentioning, Doyle testifies that the theme park industry accounts for the age of patrons in developing rules/standards, contrary to Plaintiff's unsupported assertion that "[SFGA] should not permit . . . a 14 year old" to decide whether to carry a phone or unsecure it. *See* Def.

10

Rep. Br., Ex. M, at T27:2-22. Regardless of the industry standard, after Doyle reviewed SFGA's Standard Operating Procedures, he did not raise any objections or identify any deficiencies. *Id.* at T271:9-282:6. These "record facts" render his opinions to the contrary "unreasonable." *ZF Meritor*, 696 F.3d at 290.

Second, Doyle concludes that SFGA "failed . . . to ensure that riders . . . secured their loose articles" before boarding El Toro, and "should have known that their policies were not being followed." *See* Pl. Br., Ex. G. At the same time, however, Doyle admits that he has "no information" that Volgado did not secure her cellphone while queueing for El Toro, *id.* at T149:14-19, no evidence that "the operator saw [Volgado] with a cellphone or suspected that she had a cellphone" before boarding El Toro, *id.* at T149:20-150:11, and no evidence that Volgado unsecured her phone in view of any SFGA ride operator at any time before or during the ride. *Id.* at T150:21-151:6. Doyle further admits that SFGA could not do anything to prevent Volgado from hiding her phone from ride operators, *id.* at T150:13-152:8, T154:2-10, T216:20-217:4, or using it out of their view, *id.* at T151:8-153:3, nor is there anything SFGA could be expected to do, *id.* at T216:20-217:4, short of simply banning phones, which, as discussed *infra*, he did advise as a policy. These "record facts" also "contradict" Doyle's opinions. *ZF Meritor*, 696 F.3d at 290.

Last, Doyle concludes without support that SFGA might have "employ[ed] different methods of ensuring [its] riders do not bring loose articles onto a coaster," including "the use of metal detectors or wands as riders enter the queue," all while testifying at his deposition that such methods are not industry standard, *see* Def. Br., Ex. G, at T243:3-12, and that he has no experience with them. *Id.* In any event, Doyle admits that he does not mean to opine that SFGA should have banned cellphones, *see id.* at T150:13-20, and such a ban would not be consistent with industry standards either. *See id.* at T150:13-20, T155:3-8.

Doyle's opinions, in short, lack foundation. They consist of bare conclusions unsupported by factual evidence, reasonable inferences drawn from the record, or a logical basis. *Accord Mays v. General Binding Corp.*, No. 11-5836, 2013 WL 1986393, at *7 (D.N.J. May 10, 2013) (rejecting expert testimony on the grounds that it was "opinion lacking a proper foundation"); *Buccheri v. Nogan*, No. 17-13373, 2019 WL 3712188, at *8 (D.N.J. Aug. 6, 2019) (rejecting expert testimony on the grounds that it did not "give the why and the wherefore"); *accord Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 388 (D. Del. 2014) (holding that a court should deny a *Daubert* motion only if there is a logical basis for the expert's testimony). Since Doyle admits that SFGA's loose objects policy and training complied with industry standards, there is "little, if any," evidence of a methodology "beyond [Doyle's] own intuitions." *Oddi*, 234 F.3d at 158. Nor is there any evidence regarding what Doyle relied on to arrive at his conclusion that SFGA was negligent. *Accord Jordan v. Yum Brands, Inc.*, No. 10-5458, 2013 WL 3819377, at *4 (E.D. Pa. July 24, 2013) ("Mr. Gordon did not state in his report that he relied on industry standards . . . in reaching his opinions, and there is no evidence that he did so. Moreover, he does not explain how he reached his opinions [and] has provided no methodology. [That] renders Mr. Gordon's opinions unreliable under *Daubert*."); *Chester Valley Coach Worlds v. Fisher-Price*, No. 99-4197, 2001 WL 1160012, at *13 (E.D. Pa. Aug.29, 2001) (excluding expert testimony due to absence of a supporting methodology). Accordingly, Doyle's opinions are unreliable and independently inadmissible for that reason.

C.   *SFGA Is Entitled to Summary Judgment on All Negligence Claims*

i.   <u>Plaintiff Has Not Adduced Evidence of Ordinary Negligence</u>

Plaintiff claims that SFGA committed ordinary negligence in two ways. First, SFGA unreasonably enforced its loose objects policy by failing to instruct Volgado to secure her

cellphone while queuing for El Toro, supervise Volgado's compliance while loading her onto El Toro or during the course of the ride, and stop El Toro once they saw Volgado using her phone. *See, e.g.*, Pl. Br., at 24-25. Plaintiff relies on Doyle's expert report for proof of breach. Second, according to Plaintiff, SFGA unreasonably maintained its loose objects policy permitting secured cellphones despite a foreseeable risk that patrons would unsecure them. *See, e.g.*, *id.* at 32-37. For proof of breach here, Plaintiff submits an incident report from 2013 documenting a "forehead laceration" sustained on El Toro, and ten YouTube videos purporting to show patrons filming themselves on the ride.

To prove negligence, a plaintiff must show: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576 (2013). "A plaintiff bears the burden of establishing [each of] those elements by some competent proof." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (quotations and citations omitted). SFGA concedes that it owes Plaintiff a duty of care on park premises, but contends that Plaintiff has not established the applicable standard of care, contrary to the requirements of state common law.

"The standard of care [in a negligence claim] is flexible and fact-dependent, and negligence might be inferred from 'all the circumstances,' including the conduct of Six Flags." *Guillen v. Six Flags Great Adventure, LLC*, No. 14-2091, 2015 WL 9582141, at *5 (D.N.J. Dec. 29, 2015) (declining to grant summary judgment on a claim involving Six Flag's safety harnesses) (quoting *Kahalili v. Rosecliff Realty, Inc.*, 26 N.J. 595, 606 (1958)) (analogizing theme parks to common carriers)). A plaintiff is not required to prove the standard of care in the normal course. *See Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 407 (2014) (citation omitted). Instead, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the

circumstances were. The applicable standard of conduct is then supplied by the jury." *Sanzari v. Rosenfeld*, 34 N.J. 128, 134 (1961). Where common knowledge is insufficient, however, a plaintiff must produce expert testimony defining the "contours" of the standard. *Davis*, 219 N.J. at 407; *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 450 (1993) (concluding same).

Plaintiff's theory that the loose objects policy itself caused his injury requires expert testimony on the standard of care.[3] In general, "jurors should have the assistance of experts when required to determine issues necessitating specialized knowledge," *Jobes v. Evangelista*, 369 N.J. Super. 384, 399 (App. Div. 2004), and I am of the opinion that developing safety policies for theme park patrons is not a common issue within the ken of a jury. Other courts have reached similar conclusions. *See, e.g.*, *Bomtempo v. Six Flags Great Adventure LLC*, No. 3341-14, 2016 WL 4729642, at *2 (N.J. Super. Ct. App. Div. Sept. 12, 2016) ("[O]peration . . . of the [theme park] attraction at issue requires a thorough comprehension of the attraction's standard operating procedures . . . . These procedures require ride attendants to learn and understand an extensive body of particularized terminology regarding aquatic safety."); *Velasquez v. Land of Make Believe*, No. 0273-11, 2012 WL 986982, at *2 (N.J. Super. Ct. App. Div. Mar. 26, 2012) ("Permitting plaintiffs to present their lay opinions as to whether defendants should have operated the park in a particular fashion [when one patron stepped on another's toe] would plainly invite jury speculation. Absent an expert, there would be no proof that defendants' staffing level at the time of the incident, or the manner in which the attraction was operated, violated the regulatory

---

3       Many types of cases require expert testimony on the standard of care in New Jersey. *See, e.g.*, *Bender v. Adelson*, 187 N.J. 411, 435 (2006) (medical and dental malpractice); *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 444 (1993) (open house tours); *Giantonnio v. Taccard*, 291 N.J. Super. 31, 44 (App. Div. 1996) (funeral processions); *Fantini v. Alexander*, 172 N.J. Super. 105, 108 (App. Div. 1980) (conduct of karate teachers); *Ford Motor Credit Co. v. Mendola*, 427 N.J. Super. 226, 236-37 (App. Div. 2012) (car repair and inspection); *Costantino v. Ventriglia*, 324 N.J. Super. 437, 442 (App. Div. 1999) (workplace accidents).

requirement."); *Lenherr v. Morey Org., Inc.*, 153 F. Supp. 3d 662, 668 (D.N.J. 2015) (cautioning plaintiff that she may need to rely on expert testimony to make her case for negligence when she slipped and fell at a water park); *Guillen*, 2015 WL 9582141, at *3 (permitting testimony from an expert retained to "examine the regulations on amusement park rides"); *Dare v. Freefall Adventures*, 349 N.J. Super. 205, 215-16 (App. Div. 2001), *certif. denied*, 174 N.J. 43 (2002) (holding that expert testimony is required to establish the standard of care for instructing and supervising skydiving patrons).

With respect to his negligent policy theory, Plaintiff cannot prove the standard of care because Doyle's testimony is inadmissible, and for that reason, he has not made out a triable issue on the question whether SFGA unreasonably permitted secured cellphones on El Toro.[4] *Cf.* Pl. Br., at 36 ("Plaintiff contends the [SFGA's] policy of permitting patrons to carry cellphones onto the El Toro roller coaster is defective."). Summary judgment is, in turn, appropriate on this claim.[5]

---

[4]     Even if Doyle's testimony were admissible, I would still grant summary judgment on Plaintiff's negligent policy theory. First, Doyle's report does not establish an accepted standard of care besides industry practices. *See, e.g.*, *Miller v. Warren Hosp. IPA, PA*, No. 15-7496, 2018 WL 566214, at *4 (D.N.J. Jan. 26, 2018) ("If a plaintiff fails to present expert testimony establishing an accepted standard of care, it is proper for the court to grant a dismissal at the close of plaintiff's case.") (collecting cases). Second, Plaintiff has not adduced evidence that SFGA violated any standard. To the contrary, according to Doyle's testimony, SFGA complied with industry practices and developed an adequate loose objects policy. *See supra*; Def. Br., Ex. G, at T143:18-144:6 ("I'm not saying specifically that their policies were deficient . . . or their procedures were deficient . . . . The implementation of their [Standard Operating Procedures] was defective . . . their follow-up with their attendants, auditing their attendants."); *id.* at T155:3-8 ("And with regard to the SOP in place at the time of [Plaintiff's] injury, you don't have any complaint about that . . . . correct?" "Yes."). Third, while such compliance is not dispositive, *see Jacobs v. Jacobs Central Power & Light Co.*, 452 N.J. Super. 494, 507 (App. Div. 2017); *Buccafusco v. Pub. Serv. Elec. & Gas Co.*, 49 N.J. Super. 385, 394 (App. Div. 1958) ("Adherence to an industry standard is not necessarily conclusive as to the issue of negligence."), *certif. denied*, 27 N.J. 74 (1958), Plaintiff has not adduced other evidence to support his negligent policy theory, beyond the 2013 incident report and the YouTube videos, which are insufficient under the totality of the circumstances for the reasons discussed *infra*.

[5]     Gross negligence differs from ordinary negligence in degree only. *Graddy v. Deutsche Bank*, No. 11-3038, 2013 WL 122655, at *3 n.1 (D.N.J. Mar. 25, 2013) (citing *Monaghan v. Holy Trinity Church*, 275 N.J. Super. 594, 599 (App. Div. 1994)). Insofar as Plaintiff's ordinary negligence claim fails, so must his gross negligence claim.

*Accord Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*, 662 F. Supp. 635, 639 (N.D. Ill. 1987) (Posner, J.) ("Summary judgment for a plaintiff in a negligence action is rare, but not impossible.").

Plaintiff's theory that SFGA unreasonably enforced its loose objects policy does not require expert testimony, unlike his negligent policy theory. *See, e.g.*, Pl. Br., at 23-24. Still, Plaintiff relies on Doyle's report alone for support, and the report—assuming it is admissible— cannot establish a *prima facie* case of negligent enforcement. Specifically, there is no evidence in the record that ride operators failed to instruct Volgado to secure her phone or monitor her for compliance before boarding El Toro, took their eyes off of the ride once it began, or noticed Volgado's phone during the course of the ride yet declined to stop the roller coaster.[6] Plaintiff

---

6   During discovery, Plaintiff deposed Jason Freeman, Corporate Vice President of Security, Safety, Health, and Environment at SFTP and SFEC beginning in 2017, and an officer of SFGA; Len Turtora, SFGA's Operations Director; SFGA's liability expert, Jerry Aldrich, who held Freeman's position at the time of Plaintiff's injury in 2014; and Doyle, Plaintiff's own expert. I cannot find any evidence of negligent enforcement in any deposition, at least insofar as the excerpts Plaintiff attaches to his brief. *See Holland v. New Jersey Dep't of Corrections*, 246 F.3d 267, 285 (3d Cir. 2001) (stating that courts need not "scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" and make the parties' arguments for them); *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.") (quotations omitted). For example, the vast majority of what Plaintiff insists is key testimony focuses on whether SFGA developed a defective loose objects policy in the first place, *see, e.g.*, Pl. Br., Ex. C, at T94:2-25, the corporate structure for SFGA, SFTP, and SFEC and whether Freeman or Turtora had a hand in policymaking, *see, e.g.*, *id.*, Ex. D, at T11:17-23, and whether the policy at issue here could have been safer in theory—which, to be sure, is a very different question from whether it was negligent. *See, e.g.*, *id.*, Ex. F, at T54:17-55:6; Def. Rep. Br., Ex. M, at T49:4-50:20. Doyle is the only witness who testifies to negligent enforcement, but Plaintiff attaches just one page of his deposition. *See* Pl. Br., at T149:18-19. SFGA highlights far more from Doyle, because his testimony clearly supports its contention that Plaintiff has not made out a triable issue on this theory. *See, e.g.*, Def. Br., Ex. G, at T150:6-12 ("[T]here's no evidence that says one way or the other whether the operator saw [Volgado] with a cellphone or suspected that she had [one]."); *id.* at T151:2-8 ("Do you have any . . . evidence that [Volgado] had her cellphone out in view of any [SFGA] employee before the actual incident?" "No."); *id.* at T152:19-153:3 ("[It's] not physically possible [to stop] this coaster. There is no block system between dispatch and – and the end . . . . there's one launch and then that's it."); *id.* at T154:4-10 ("So [SFGA] couldn't have done anything to prevent this incident if [Volgado] took [her] cellphone out mid-ride?" "Correct."); *id.* at T315:2-316:10 (stating that he is not aware of any evidence that Volgado did not secure her phone while boarding El Toro and leave it secured until after the ride "left the station and the view of the operators," at which point no one could have done anything to stop Volgado or the coaster, and agreeing that "El Toro ride operators may well have ensured that all of the riders . . . on July 5, 2014, did have their loose articles secured" until "after the train was gone"); *id.* at T301:21-302:17 (stating that he is not aware of any evidence SFGA had around the time of Plaintiff's injury indicating that ride operators negligently enforced the loose objects policy in general).

lacks even a "scintilla" of evidence in this regard. Stated differently, Plaintiff has failed to counter SFGA's position that it checks patrons for loose objects while loading them onto El Toro as a matter of practice and "clearly posts and announces" its loose objects policy in the ride's queue. *See* Def. SUMF, ¶ 15; Ex. D (attaching various photos, apparently taken by Plaintiff's investigator, depicting signage). Accordingly, summary judgment is appropriate on this claim.

### ii.   Plaintiff Has Not Adduced Evidence of Negligent Training

Plaintiff also claims that SFGA negligently trained ride operators to enforce its loose objects policy. *See* Pl. Br., at 17. A court may impose liability on an employer who fails to train or otherwise supervise its employees. *Tobia v. Cooper Hosp. Univ. Med. Ctr.*, 136 N.J. 335, 346 (1994); *Vasquez v. Gloucester County*, No. 13-4146, 2015 WL 3904550, at *5-6 (D.N.J. June 25, 2015). Because this claim sounds in negligence, in order to make out a *prima facie* case, a plaintiff must establish the usual elements. *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987); *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010). Plaintiff's failure to train claim falls short for the reasons already discussed: Plaintiff has not adduced any evidence that SFGA did not train ride operators to safely run El Toro. *See supra*, notes 4, 6. Doyle's own testimony suggests the opposite. *See, e.g.*, Def. Br., Ex. G, at T145:1-13 (acknowledging ride operators must take and pass a test, and stating "no complaint about that"); *id.* at T146:22-24 ("Did you have any complaint about [the SFGA] training manual on [the loose objects policy]?" "No."); *id.* at T147:12-14 ("The training as it appears on the – the certifications, the manuals – that I've seen appears to be adequate."). Accordingly, I grant summary judgment on this claim as well.

### iii.   Plaintiff Has Not Adduced Evidence of Premises Liability

Finally, Plaintiff claims that SFGA maintained dangerous conditions on park premises by permitting cellphones on El Toro despite knowing that (1) patrons use them during the ride and

(2) such conduct caused (at least one) prior injury. *See* Pl. Br., at 18, 31. Plaintiff relies solely on the YouTube videos and the 2013 incident report for support. Plaintiff offers similar evidence to advance his ordinary negligence claims. *See supra*, notes 4, 6. "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559 (2003). A business owner must discover and eliminate dangerous conditions, maintain the premises in safe condition, and avoid creating conditions that would render the premises unsafe. *See O'Shea v. K. Mart Corp.*, 304 N.J. Super. 489, 492-93 (App. Div. 1997). I take each piece of evidence in turn, starting with the incident report.

Plaintiff argues that SFGA maintained a dangerous condition in its park because it knew a patron suffered "lacerations to the forehead" from a cellphone while riding El Toro in 2013, yet continued to permit riders to carry cellphones (just secured—in pockets or otherwise). *See* Pl. Opp., Ex. H (incident report). This claim turns directly on the foreseeability of third-party conduct. *See Clohesy v. Food Circus Supermarkets*, 149 N.J. 496, 502 (1997). "New Jersey courts consider the totality of the circumstances to determine whether third party acts are foreseeable." *Antonio v. Harrah's Atl. City Propco, L.L.C.*, No. 17-09092, 2020 WL 1030842, at *4 (D.N.J. Mar. 3, 2020); *Bozza v. Vornado, Inc.*, 42 N.J. 355, 359 (1964) ("Generally, a proprietor's duty to his invitee is one of due care under all the circumstances."). Given this "flexible, practical . . . standard," which "encompasses all the factors a reasonably prudent person would consider," *Clohesy*, 149 N.J. at 508, similar prior incidents are neither necessary nor sufficient to establish breach. *See Kuehn v. Pub Zone*, 364 N.J. Super. 301, 312 (App. Div. 2003) ("[F]oreseeability depends . . . instead on an evaluation of the totality of the circumstances."); *Burns v. Brandywine Realty Tr., Inc.*, No. 0647-09, 2010 WL 2555417, at *3 (N.J. Super. Ct. App. Div. June 24, 2010) (rejecting the argument

that the reasonableness of a business owner's policy or practice is determined "by resort solely to the existence of prior similar [ ] incidents"); *Lanigan v. Marina Dist. Dev. Co., LLC*, No. 08-5201, 2011 WL 1211320, at *4 (D.N.J. Mar. 28, 2011) (same); *Antonio*, 2020 WL 1030842, at *4.[7]

Drawing all reasonable inferences in Plaintiff's favor, and given all of the circumstances here, Plaintiff cannot demonstrate that SFGA breached its duty of care by failing to change its loose objects policy after 2013, when it documented (apparently the first) phone-related injury on El Toro. Plaintiff's claim fails because he does not provide any substantive information about the prior injury, aside from the bare-bones, one-sentence incident report itself,[8] on the basis of which a jury could reasonably infer that the injury occurred under similar facts, conditions, or circumstances.[9] *Accord Lanigan*, 2011 WL 1211320, at *4 (granting summary judgment in part because plaintiff did not show that twelve previous assaults on the premises "involved scenarios similar" to his); *Antontio*, 2020 WL 1030842, at *4 (granting summary judgment in part because plaintiff did not show that eight previous instances in which patrons fell into a pool on the premises "arose because patrons were wildly dancing [nearby]"); *Burns*, 2010 WL 2555417, at *5 (granting summary judgment in part because plaintiff did not show that six prior thefts raised the inference

---

7       Premises liability typically applies "in circumstances where a plaintiff is injured by an unsafe condition of the actual physical premises, such as water or food on the floor." *Lanigan v. Marina Dist. Dev. Co., LLC*, No. 08-5201, 2011 WL 1211320, at *2 (D.N.J. Mar. 28, 2011). Although this case casts premises liability in a different context—a policy allegedly created a foreseeably dangerous condition (unsecured cellphones on rides), which in turn allegedly caused Plaintiff's injury—"the elements" and analysis "are the same." *Id.*; *infra*, note 10.

8       The report is so blurry that it is almost illegible. Plaintiff also fails to point to other discovery he took on it, if any. Discovery is now closed.

9        Without such information, it is unclear whether the 2013 report is even admissible under Fed. R. Evid. 401. *See, e.g.*, *Stecyk v. Bell Helicopter Textron*, No. 94-1818, 1998 WL 744087, at *4 (E.D. Pa. Oct. 23, 1998) ("The plaintiff bears the burden of establishing sufficient similarity between the prior incidents and his own theory of how the accident occurred, so that admitting the prior incident evidence will make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence.") (quotations and citation omitted).

that "defendants should have been aware of the likelihood of [such acts]"). Without any context showing how or why the prior injury occurred—or what, if anything, SFGA did in response[10]— no reasonable juror could conclude that the 2013 report put SFGA on notice of dangerous conditions resulting from its loose objects policy. This barely constitutes "a scant history of similar prior incidents," which is insufficient, without more, to defeat SFGA's summary judgment motion.[11] *Burns*, 2010 WL 2555417, at *5; *Antonio*, 2020 WL 1030842, at *4 (noting that, although "other patrons [got] bumped into the pool before, such occurrences were rare, and happened, at the most, only three times"); *Ivins v. Town Tavern*, 335 N.J. Super. 188, 197 (App. Div. 2000) (concluding that the defendant did not breach its duty of care because only two violent incidents occurred in the prior year, and as such, there was no reason to foresee more).[12] At bottom, "[a]n inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess," *Long v. Landy*, 35 N.J. 44, 54 (1961), and a busines such as SFGA "is not an insurer for the safety of its patrons," contrary to

---

10      And, to be sure, Plaintiff has adduced no such evidence here. *See, e.g.*, Def. Br., Ex. G, at T172:20-173:2 ("Do you know if [SFGA] provided additional training when it became aware of any incident on El Toro?" "I'm not aware of it." "One way or the other?" "No.").

11      Although not decisive, Doyle's testimony confirms that it is industry practice *not* to change policies immediately upon an injury such as Plaintiff's, or even upon two like injuries. *See, e.g.*, Def. Br., Ex. G, at T167:7-15 ("If something happens once, it's an incident . . . . "[i]f it happens twice, it's bad luck" . . . . "[i]f it happens three times, it's a pattern."); *id.* at T175:1-6 ("And it's at that . . . three times point . . . where you start looking at what . . . if anything, are we doing wrong here?" "Yes.").

12      Most, but not all, case law in this area of premises liability involves negligent security. A plaintiff will allege that a business owner failed to protect him from voluntary third-party criminal acts occurring on the premises, contend that such acts were foreseeable, and assert liability on that basis. Although Plaintiff does not specifically argue this, I do not see any reason why the non-criminal nature of the third-party conduct at issue (Volgado's unsecuring her cellphone) should change the "totality of the circumstances" analysis, or otherwise matter to the disposition of this case. Nor do I see any reason why cases involving the foreseeability of criminal third-party conduct should not be persuasive on these facts.

Plaintiff's position in this admittedly unfortunate case. *Znoski v. Shop-Rite Supermarkets, Inc.*, 122 N.J. Super. 243, 247 (App. Div. 1973).[13]

Plaintiff also argues that SFGA maintained a dangerous condition in its park because YouTube videos purport to show patrons filming themselves on El Toro—the implication being that SFGA should have known about such cellphone use and revised its policy accordingly.[14] This argument fares no better, but for a different reason: the videos are not capable of being admissible at trial, at least not as Plaintiff has presented them. *See, e.g.*, *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 (3d Cir. 1995) ("[Evidence] can be considered on a motion for summary judgment if [it is] capable of being admissible at trial."); *United States v. Browne*, 834 F.3d 403, 432-38 (3d Cir. 2016) (requiring internet evidence to be authenticated); *Regmund v. Talisman Energy USA, Inc.*, No. 16-711, 2016 WL 5794227 at * 9 (W.D. Pa. Aug. 31, 2016) (same, even if it is admissible under a hearsay exception); *United States v. Bansal*, 663 F.3d 634, 667-68 (3rd Cir. 2011) (authenticating internet evidence only if the foundation a party lays "support[s] a finding that [the evidence] is what it purports to be").

To begin, "web postings are . . . typically inadmissible as hearsay," *Southco, Inc. v. Fivetech Tech. Inc.*, 982 F. Supp. 2d 507, 515 (E.D. Pa. 2013) (citation omitted), yet Plaintiff has

---

[13]    Although Plaintiff does not specifically argue this either, *see* Pl. Br., at 37, because SFGA operates Six Flags through patron-employee interactions, not self-service, the instant matter is not an appropriate case for the "narrow" mode-of-operation exception to premises liability, *Prioleau v. Kentucky Fried Chicken, Inc.*, 434 N.J. Super. 558, 581 (App. Div. 2014), under which a plaintiff "is relieved of showing actual or constructive notice of the dangerous condition" due to "the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003) (granting "the plaintiff an inference of negligence" and "imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard"); *Arroyo v. Durling Realty, LLC*, 433 N.J. Super. 238, 244 (App. Div. 2013). In any event, it does not appear to me that a risk of injury is inherent in SFGA's method of doing business, and Plaintiff has not adduced evidence of a pattern of similar injuries, but rather a single one from 2013.

[14]    Plaintiff references years' worth of videos numbering in the hundreds, "voluminous content" in his words, but does not provide any support for this contention, and submits only ten clips.

not pointed to any exception to Fed. R. Evid. 802 under which the YouTube videos could be admissible. Further, Plaintiff has not offered the source or origin of the videos, *see Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("[W]e allow judicial notice only from sources not subject to reasonable dispute."); who filmed them, when, and under what circumstances; whether they were taken with a cellphone, go-pro, or some other device; or if they were altered in any respect, even just cropped or shortened. *Accord Brindis v. Massanow*, No. 00-6495, 2001 WL 1607485, at *3 (N.D. Ill. 2001) (stating unauthenticated internet material such as this is "adequate for almost nothing"); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999) ("Anyone can put anything on the internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation.").

Even if sufficient information about the videos were discernable in the record, Plaintiff has not offered a witness with personal knowledge to lay a foundation. *See Bansal*, 663 F.3d at 668; *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004) (stating that, to authenticate evidence from a website, the party proffering it must produce "some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge"). Certification from Plaintiff's counsel is not appropriate for authentication in this context. *See Westfield Ins. Co. v. Interline Brands, Inc.*, No. 12-6775, 2013 WL 6816173, at *19 (D.N.J. Dec. 20, 2013). Finally, and in any event, such evidence would not be sufficient to put SFGA on notice. *See supra*.

### D.  *Defendants' Third Party Complaint*

As a final note, Defendants have filed a Third Party Complaint seeking contribution and indemnification. *See supra*; ECF No. 19. Having granted summary judgment in their favor on all

claims, there does not appear to be any basis on which their Third Party Complaint survives. Accordingly, within five (5) days of the date of this Opinion, Defendants are directed to withdraw it or the Court will dismiss it *sua sponte*.

## IV.   CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion to Exclude Plaintiff's expert testimony, **GRANT** their Motion for Summary Judgment,[15] and **DISMISS** this case.

**DATED**: April 15, 2021                                    /s/ Freda L. Wolfson
                                                             Hon. Freda L. Wolfson
                                                             U.S. Chief District Judge

---

15     Plaintiff also asserts liability against STFP and SFEC. Plaintiff does not "attempt to pierce the corporate veil," *see* Pl. Opp., at 9, but rather seeks to demonstrate ordinary negligence. Plaintiff's evidence consists of deposition testimony from Freeman, which purports to show that SFTP and SFEC "provide oversight and guidance" on "safety policies." *See* Pl. Br., at 2-6; *id.*, Exs. A-C. Plaintiff also points to deposition testimony from Turtora, which purports to show that El Toro "was not safe" because SFGA did not ban cellphones altogether. *See* Pl. Br., at 10-11, 27; *id.*, Ex. D. Because Plaintiff has not submitted sufficient evidence to defeat summary judgment on his negligence claims against SFGA, his claims against these entities must also fail.